UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

JEAN M. SUNDSTROM and
JOHN M. SUNDSTROM,

                  Debtors.

_____

EMERGING VISION, INC.,

                  Plaintiff,

v.

JEAN M. SUNDSTROM and
JOHN M. SUNDSTROM,

                  Defendants.

Case No. 05-41463

Chapter 7

Adversary No. 06-2286

_____

MEMORANDUM DECISION
_____

      Emerging Vision, Inc., the plaintiff, filed this adversary proceeding seeking denial of the debtors' discharge under 11 U.S.C. § 727(a)(2)(A). The plaintiff alleges as cause for the denial of discharge the undisputed fact that the debtor wife transferred assets of her sole proprietorship to a newly incorporated entity shortly after the plaintiff obtained a judgment against her in New York and registered the judgment in Wisconsin. This court previously denied the debtors' motion for summary judgment, finding, among other things, a genuine issue of material fact existed with respect to the debtors' intent to hinder, delay or defraud the plaintiff or other creditors. Although no motion is currently pending, at a telephone conference the parties agreed that no trial was necessary for the court to determine if the debtors' actions compelled a finding that there was a transfer, and the debtor or debtors had intent to hinder, delay or defraud the

plaintiff or other creditors. The court had been able to observe the parties' demeanor with respect to the circumstances complained of at an earlier evidentiary hearing on November 8, 2006, the transcript of which was reviewed by the court. The parties also submitted further evidence in the form of deposition transcripts, affidavits, and documents in lieu of trial. The following constitutes the court's conclusions of law pursuant to Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), and the court has jurisdiction under 28 U.S.C. § 1334.

## BACKGROUND

The plaintiff, Emerging Vision, Inc., operates and franchises a nationwide chain of retail optical stores, including Sterling Optical, each of which offers a wide array of eye care services and products. On August 1, 1996, Ms. Sundstrom entered into a Franchise Agreement with the predecessor-in-interest to Emerging Vision. The franchise was granted for a term of 10 years, commencing on August 2, 1996, and obligated Ms. Sundstrom to pay various royalty and advertising fees to Emerging Vision. Ms. Sundstrom operated her franchise as a sole proprietorship. During the course of the agreement, Ms. Sundstrom issued three promissory notes to Emerging Vision, in exchange for loans she had received from Emerging Vision or its predecessor, to purchase her franchise and additional equipment.

Ms. Sundstrom stopped making her franchise-related payments to Emerging Vision in 2001 and stopped making payments on the three outstanding notes in 2004. Emerging Vision brought suit in the Supreme Court of New York for Nassau County seeking judgment for the outstanding balance on the notes. On December 1, 2004, the New York court entered judgment in favor of Emerging Vision and against Ms. Sundstrom in the amount of $105,957.42.

On January 13, 2005, Ms. Sundstrom met with corporate attorney Samuel Sundet,

2

Case 06-02286-mdm    Doc 59    Filed 08/30/07    Page 2 of 13

bankruptcy attorney Christine Wolk, and accountant Pamela Bartow regarding the incorporation of Stellar Vision. On January 27, 2005, Emerging Vision registered the Note Judgment in Wisconsin Circuit Court for Winnebago County, and notice was sent to Ms. Sundstrom's place of business and her corporate attorney. On January 27, 2005, Articles of Incorporation for Stellar Vision were filed.

On February 14, 2005, Ms. Sundstrom transferred most, if not all, of the tangible assets, and all of the intangible assets of her Sterling Optical franchise to Stellar Vision. In exchange for transferring to Stellar Vision an ongoing and operating retail optical business – her Sterling Optical franchise – Ms. Sundstrom received 100 shares of Stellar Vision stock with a stated value of $1,000. Stellar Vision did not assume the Emerging Vision liabilities. The assets were carried on the books with a value of $4,500.

Ms. Sundstrom admits that the Emerging Vision debt was part of the reason why she transferred her Sterling Optical business to Stellar Vision. Although not involved in the management and control of Stellar Vision, John Sundstrom had knowledge of the transfer of Ms. Sundstrom's Sterling Optical franchise and permitted the transfer to take place.

On March 17, 2005, Ms Sundstrom caused Stellar Vision to obtain a loan from First National Bank-Fox Valley to purchase a lens cutter. Due to the instant depreciation of the asset, First National took a security interest in all of Stellar Vision's assets.

Because of Ms. Sundstrom's operation of Stellar Vision at her franchise location and her failure to pay outstanding royalty and advertising fees, on September 27, 2005, Emerging Vision brought suit in the Supreme Court of New York for Nassau County, seeking injunctive relief and a judgment for the unpaid fees.

On October 13, 2005, the debtors filed a voluntary chapter 7 petition for relief and listed

their liabilities to Emerging Vision as $304,026.

ARGUMENT

*Plaintiff's Argument*

The plaintiff argues the debtors made a "transfer" of property within the meaning of 11 U.S.C. § 727(a)(2) when they shifted their personal property into a wholly-owned corporation formed by Ms. Sundstrom shortly after the plaintiff obtained a judgment against her. The debtors acknowledge transferring the property within one year of bankruptcy. When the debtors shifted their personal assets to the newly formed corporation, they parted with title to the assets and personal ownership of the assets. Even though Ms. Sundstrom obtained 100% of the new company's stock, her property interests in the assets had changed. This change in title and interest in property is sufficient to meet the comprehensive definition of a "transfer." Many courts have held that when a debtor shifts assets into a corporation, there are sufficient grounds to deny the debtor's discharge under section 727. *See, e.g., Matter of Snyder*, 152 F.3d 596, 602 (7th Cir. 1998); *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983); *In re Spitko*, 357 B.R. 272, 303-04 (Bankr. E.D. Pa. 2006); *In re Turner*, 335 B.R. 755, 761 (Bankr. D. N.M. 2005).

The plaintiff rejects the debtors' argument that because the assets transferred had no value, the transfer could not have reduced assets available to creditors. *See In re DeLong*, 323 B.R. 239, 248 (W.D. Wis. 2005) (stating that once a bankruptcy court finds the requisite intent, "it is irrelevant whether the transfer reduced the amount of assets available to the creditor"). Because it is irrelevant whether the transfer reduced the amount of assets available to the creditor, the plaintiff asserts, it follows that it is irrelevant whether the transfer technically takes the assets out of the creditor's reach because the creditor need not show harm to prove a section 727 claim. The availability of any exemption does not establish a defense to the plaintiff's

4

complaint as a matter of law. Nevertheless, the plaintiff points out that the debtors did not transfer a discrete number of tangible assets; they transferred an ongoing business concern, with gross sales in excess of $500,000. Wisconsin's "tools of the trade" exemption statute does not exempt intangible assets such as good will, customer lists, or know-how, all of which the debtors transferred to Stellar Vision. Additionally, the plaintiff asserts the book value of the tangible assets transferred should be at least $61,000.

In the alternative, the plaintiff argues that even if the court concludes that the debtors did not make a "transfer," they should still be found to have "removed" or "concealed" their assets by transferring them into Stellar Vision for little to no consideration. Ms. Sundstrom has admitted that she never informed the plaintiff of the asset transfer. The debtors only disclosed the transfer after the plaintiff questioned them about it at the section 341 meeting of creditors. There was no mention of the transfer in the Statement of Financial Affairs or during questioning at the section 341 meeting by the trustee.

According to the plaintiff, it has established that the debtors acted with intent to hinder, delay or defraud a creditor, and the debtors cannot point to any record evidence to rebut the presumption under section 727(a)(2)(A). *See In re DeLong*, 323 B.R. 239 (W.D. Wis. 2005) (once the plaintiff submits evidence of one or more badges of fraud, the burden shifts to the debtor to show he lacked fraudulent intent). The evidence is also sufficient to deny the debtors' discharge under section 727(a)(4) for the making of a "false oath or account" by not disclosing the transfer on their Statement of Financial Affairs or to the trustee at the meeting of creditors.

*Defendants' Argument*

The debtors argue they never acted with the intent to hinder, delay or defraud a creditor. They did not transfer their assets out of the reach of creditors, and in fact, by converting exempt

5

assets into non-exempt assets, they created assets for their creditors. At the time of the incorporation of Stellar Vision, Inc., on January 27, 2005, and the subsequent transfer of assets into that corporation on February 14, 2005, the debtors were entitled to the protection of the Wisconsin exemptions set forth in section 815.18(b), Wis. Stat., and were entitled to claim a total of $15,000 in "tools of the trade." According to the debtors and their accountant, the subject assets were valued at far less than $15,000 at the time of the transfer; any value in the business is in Ms. Sundstrom, herself. When a debtor's interest in a transferred asset is exempt from execution under state law, the prepetition transfer is "not a transfer with actual intent to defraud [the creditor] because [the creditor] could never have had a claim to the asset in the first place." *Matter of Agnew*, 818 F.2d 1284, 1290 (7th Cir. 1987); *see also Matter of Weis*, 92 B.R. 816, 822 (Bankr. W.D. Wis. 1988).

The debtors point out that the cases cited by the plaintiff in support of its position all involved a scheme to defraud creditors through the transfer of assets to third parties or the transfer of non-exempt property into exempt property.

The debtors further note that a section 727(a)(4) claim was not plead in the plaintiff's complaint. Furthermore, they disclosed the corporation as an asset on Schedule B and never concealed the transferred property. Because the debtors did not recognize that incorporation of the optical business constituted a transfer, they did not disclose it on their Statement of Financial Affairs or in response to questioning by the trustee. Ms. Sundstrom did not use the corporation as her alter ego; she did not pay personal expenses from the business; she took loans out through the business, and, for all purposes, treated the new corporation as a separate business entity. She believed the New York litigation ended her relationship with Emerging Visions, and she had a legitimate business purpose in setting up the new business. She denies having the requisite intent

6

under section 727.

DISCUSSION

Section 727(a)(2)(A) provides that a debtor may not obtain a discharge if:

> [T]he debtor, with intent to hinder, dely, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition....

11 U.S.C. § 727(a)(2)(A).

In order to succeed with an objection to discharge based on section 727(a)(2), the creditor must prove by a preponderance of the evidence:

> (1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

*Matter of Agnew*, 818 F.2d 1284, 1287 (7th Cir. 1987) (citation omitted); *see also In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999) (discussing standard of proof). The burden of proof for denial of the discharge is on the creditor. Fed. R. Bankr. P. 4005.

Earlier in this proceeding, the court declined to dismiss the complaint against John Sundstrom at the summary judgment stage because there was at least some evidence that he was aware of what was happening with respect to his wife's business, even though he was not an active participant. No further evidence was propounded to show that he had any part in her decisions, nor is there any showing of wrongful intent on his part. Therefore, the plaintiff has failed to meet its burden of proof with respect to John Sundstrom, and the complaint against him will be dismissed and his discharge granted.

With respect to the major player in this scenario, a concern the court raised early on is the issue of whether Jean Sundstrom's actions even resulted in a "transfer." This is the fourth consideration in the *Agnew* standards, and it is critical to the cause of action in this proceeding. The 2005 version of the Bankruptcy Code defined a "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). More specifically in this case, it is not clear that the debtor, Jean Sundstrom, disposed of or parted with the business's assets when she owned them as a sole proprietor and placed them in the name of a corporation that was wholly owned and controlled by her. Assets that had no record title were placed on the books of Stellar Visions, but in no way were they removed from her control nor, more importantly, were they removed from the pool of assets that could be executed on for recovery by her creditors. One case cited by the plaintiff in support of its proposition that the transfer of assets to a corporation controlled by the debtor is sufficient for denial of the discharge involved corporations that were nominally owned by someone other than the debtor. *See Matter of Snyder*, 152 F.3d 596 (7th Cir. 1998) (sole shareholders of corporations were debtor's father and brother-in-law). Such a situation would clearly constitute a transfer and would show intent to put the assets beyond the reach of a creditor while continuing to make them available to the debtor. The series of *Watman* cases also involved transfers solely owned by the debtor. These decisions mysteriously do not address the recoverablilty of the assets solely owned by a corporation in control of the judgment debtor, but the debtor in that case took other actions obviously designed to frustrate the creditor, which eventually resulted in the loss of his discharge. *See In re Watman*, 458 F.3d 26 (1st Cir. 2006); *In re Watman*, 301 F.3d 3 (1st Cir. 2002). Nevertheless, the transfer

8

of ownership, even without diminution of assets available to a creditor, and certainly without loss of control by the debtor, appears to meet the expansive bankruptcy definition of "transfer."

While a "transfer" within the meaning of the Code clearly occurred within one year prepetition in this case, the definitive issue for the court is whether the circumstances surrounding that transfer are sufficient to find the requisite intent on the part of the debtors to hinder, delay or defraud the plaintiff or other creditors.

Though actual intent is difficult to prove, it may be shown through circumstantial evidence, and the Seventh Circuit adopted a series of factors which, if proven, indicate actual fraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002) (citing *Matter of Chastant*, 873 F.2d 89, 91 (5th Cir. 1989) (citation omitted)). If the creditor can show that any of these factors are met, a presumption of an intent to defraud establishing a prima facie case is created and the burden is shifted to the defendant to demonstrate that she or he lacked fraudulent intent. *Id.*; *see also In re DeLong*, 323 B.R. 239, 247-48 (W.D. Wis. 2005).

When a transfer results in assets being unavailable to a creditor, or to an anticipated creditor, a debtor's wrongful intent is fairly easy to infer. Conversion of nonexempt property into exempt property, when coupled with other shifty conduct, may also be sufficiently suggestive of intent to hinder, delay, or defraud that a discharge can be denied. *See, e.g., Matter of Smiley*, 864 F.2d 562 (7th Cir. 1989). Furthermore, the prepetition undoing of an earlier fraudulent transfer,

9

once legal counsel has pointed out the error of the debtor's ways, does not necessarily absolve the debtor of his original wrongful intent, so the discharge may not be salvageable. *Cf. Village of San Jose v. McWilliams*, 284 F.3d 785, 792 (7th Cir. 2002). We also know that the advice of counsel will not negate a debtor's wrongful intent. *See In re Watman*, 458 F.3d 26, 34 (1st Cir. 2006).

The closest analogous case to the fact situation presented in this case is *In re Watman*, cited above and decided by courts up and down the First Circuit over several years. Dr. Watman, a dentist, and his former partner had a spectacularly acrimonious falling out, resulting in a sizeable judgment against Dr. Watman and his former corporate entity, followed by his bankruptcy and an objection to his discharge. About the time of the judgment, the debtor transferred all assets of his former corporation to a new, solely owned, corporation at the same location, with the same employees, the same patient records, and the same equipment. He did so on the advice of counsel in close proximity to a judgment arising out of a business relationship gone sour. So far, this looks very much like the Sundstrom fact situation. However, intent to hinder, delay, or defraud a creditor, as that trio is used in section 727(a)(2), requires analysis of the totality of circumstances, and the existence of a single factor in the context of a series of events is not necessarily determinative. Dr. Watman not only shifted his practice to his new corporation, he wrote 37 checks on the old corporation's account, totaling over $42,000, to prepay anticipated expenses of the new corporation, such as rent and payroll, thus stripping the old corporation of funds that would have been subject to the judgment. This allows a fairly easy inference of intent when combined with the series of other events resulting in his financial restructuring.

Ms. Sundstrom did not engage in similar conduct to frustrate the creditor. She testified

10

credibly that she believed she had been abandoned by the plaintiff, and her franchise agreement was de facto terminated. (Transcript of hearing held 11/8/06, pp. 95-153) She also believed the notice of default and the suit on the notes meant the parties were no longer contractually bound. The court found she was mistaken in the legal sense, but her belief was not unfounded. She believed she did not violate the covenant not to compete because there is no nearby Sterling Optical franchise – not an unreasonable interpretation – although the new business technically violated the provision. She had found support and networking inadequate, and she had been paying for her own advertising, although the Emerging Vision representative testified there had been some advertising, and Ms. Sundstrom's store was on the franchise website. She had been taking advantage of discounts in purchasing optical supplies, but she testified discounts were common, and she was purchasing in the name of Stellar Vision.

The plaintiff argued the debtor concealed the transfers because she did not notify it that she set up the new business. However, she was in the same place, had a new sign, and was advertising and purchasing under the new name. This is not concealment that the ordinary person would recognize; certainly it is not like a change of record title that would not be obvious to anyone passing by. *See, e.g., In re Olivier*, 819 F.2d 550 (5th Cir. 1987) (debtor's transfer of record title to home and continued retention of secret beneficial interest therein warranted denial of discharge). Also, the stock in the new corporation was disclosed in the bankruptcy schedules. The court finds there was no concealment.

The defendant also asserted she did not believe the incorporation of the business constituted a transfer. In an unpublished opinion by this court's colleague, the court held that "under this section there must be a cognizable transfer of valuable property which reduced the assets available to creditors; the debtor will not be denied a discharge on 'general equitable

11

considerations.'" *In re Bukowski*, Case No. 96-25586 (Bankr. E.D. Wis. May 26, 1999) (citation omitted). The court also held that the debtor's setting up business as a different company did not constitute a "transfer" of assets within the meaning of section 727. *Id.* While this court has held there was a technical transfer, the debtor's interpretation is reasonable and credible and negates the wrongful intent required for denial of discharge.

Accordingly, the plaintiff has failed to meet its burden of proof under section 727(a)(2), and the complaint will be dismissed. Jean Sundstrom will be granted her discharge.

A cause of action under section 727(a)(4) and the alleged facts in support thereof were not plead in the plaintiff's complaint, but this issue was raised in argument. Section 727(a)(4) provides, in relevant part, that a debtor may not obtain a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account...." 11 U.S.C. § 727(a)(4). The plaintiff asserts the debtors' discharge should be denied because they did not disclose the transfer on their Statement of Financial Affairs or to the trustee at the meeting of creditors. The debtors counter that they did not disclose the transfer on their Statement or in response to questioning by the trustee because they did not recognize that incorporation of the optical business constituted a transfer.

Even if that belief is technically incorrect, literally it is correct because, as stated above, the same assets were still subject to recovery by the creditor. It could execute on the stock of Stellar Vision and liquidate the assets. Indeed, as the debtors point out, the debtors previously had a tools of the trade exemption in the sole proprietorship assets, which they would not have in stock, so the assets subject to recovery were enhanced. Even experienced bankruptcy counsel did not consider this transaction a transfer. The plaintiff's accountant, testifying in deposition, indicated that the plaintiff's liability was not transferred to the new corporation for tax reasons

(Transcript of hearing held 11/8/06, p. 29), and the book value of assets and stated value of stock issued did not have a nefarious purpose or any discernable effect on plaintiff's potential recovery. Therefore, the court is satisfied that the debtors' failure to report this transfer did not evince any wrongful intent, nor was any misstatement knowing or fraudulent. Since the court finds the plaintiff did not meet its burden of proof under section 727(a)(4), it is not necessary to rule on whether the plaintiff should be allowed to amend its pleadings after trial pursuant to Fed. R. Bankr. P. 7015. The discharge will not be denied under 11 U.S.C. § 727(a)(4).

Because the plaintiff has not met its burden under 11 U.S.C. §§ 727(a)(2)(A) or (a)(4), this adversary proceeding shall be dismissed. A separate order consistent with this decision will be entered.

August 30, 2007

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court